UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUSTIN NATHANIEL CUSTER, SR. ,

    Plaintiff,                                    Case No. 1:23-cv-549

v.                                                Honorable Sally J. Berens

SCOTT B. HODSHIRE et al.,

    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

2

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Hillsdale County Jail in Hillsdale, Michigan. Plaintiff sues Defendants Hillsdale County Sheriff Scott B. Hodshire, Hillsdale County Jail employee Sergeant Unknown Liggett, and the Hillsdale County Jail Administration in their official capacities only.

Plaintiff alleges that he began requesting envelopes, stamps, and paper on April 4, 2023, in order to contact courthouses in Hillsdale, Michigan, Dekalb County, Indiana, and Noble County,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Indiana, regarding pending and current criminal cases, as well as to inquire about a *pro se* divorce that he intended to file. Plaintiff was given two pre-stamped postcards and a pencil, but no paper. Plaintiff filed a grievance asserting that this was not sufficient. Plaintiff met with Defendant Liggett, who told Plaintiff that the jail was not responsible. Plaintiff told Defendant Liggett that he needed a notary because his intent was to file a "claim to be certified mail, and an envelope with postage to send an intent to file claim to [the] Attorney General of Ohio, as well as to send in this complaint." (ECF No. 1, PageID.3.)

On May 17, 2023, Plaintiff asked an officer for a certified copy of his jail account so that he could apply to proceed *in forma pauperis* when he filed the instant action. Plaintiff was told that Corporal Gibbons (not a Defendant) denied his request, stating that the jail was not a prison and that he could call his attorney or tell the Federal Court to subpoena the jail.

Plaintiff states that his request for financial information from the jail "started a snowball effect of retaliation." (*Id.*) On May 21, 2023, Plaintiff was taken to a holding cell and was not allowed any property, including legal and religious materials. Plaintiff was told that it was punishment. Plaintiff states that he needed his legal materials, letters, and court filings on pending charges in Noble County and Dekalb County, Indiana. Plaintiff was sentenced on May 22, 2023, at 8:30 a.m. to one-year imprisonment executed at the Hillsdale County Jail. Plaintiff did not receive a written rule infraction for any incident. Plaintiff requested mental health treatment for extreme anxiety, to no avail.

On May 24, 2023, Plaintiff asked Officer Fucile (not a Defendant) for a statement regarding his inmate account at the jail. Later that day, Plaintiff attempted to bring his legal and religious materials with him as he needed them for Zoom court with Dekalb County, Indiana, the next day. However, Officer Newsome (not a Defendant) told Plaintiff that he would be back in his cell the

4

same night and denied the request. Plaintiff asked to speak to a shift supervisor and was brought to Defendant Liggett, who told him that he would be in holding and called him "stupid" and "slow." (*Id.*, PageID.5.) Plaintiff states that he was told to sleep on the toilet when he was denied a mattress.

Plaintiff asserts that he has been diagnosed with severe anxiety disorder, manic depressive disorder, and paranoid personality disorder, and receives daily medication for his condition through "Lifeways" at the jail. (*Id.*) During a severe anxiety attack, Plaintiff began rubbing his scalp and singing. Plaintiff was moved to an "in[]corrigible cell" and then to a detox cell. (*Id.*) The detox cell did not have working water. Plaintiff became more anxious and was warned that he would be sprayed with pepper spray if he did not stop singing loudly because his behavior was aggressive and interfered with the rights of others. Defendant Liggett told Plaintiff that he was now Defendant Liggett's project, and Liggett would break Plaintiff. (*Id.* at PageID.6.) Plaintiff got down on the floor with his hands on his head, but he was nonetheless sprayed with pepper spray by non-party Officer Fucile while Defendant Liggett and non-party Officer Newland were present. Because there was no water in the cell, Plaintiff was forced to wash his face and hands in the toilet. Plaintiff was denied a shower, given a jumpsuit, and Officer Fucile mopped his cell. Plaintiff was told that chemical punishment was procedure for security of the jail. Although Plaintiff was advised that he could speak to mental health on the phone, he never did speak to them. Plaintiff was denied medical attention regarding a reaction to the spray and was told to call an attorney or file a claim.

On May 25, 2023, Plaintiff was sentenced by Dekalb County, Indiana via Zoom to 330 days in jail consecutive to the sentence imposed by Hillsdale County. Plaintiff was not allowed his legal materials for his defense. Plaintiff was taken back to his cell at approximately 7:30 p.m.

Plaintiff was given a notice of rule violation hearing and was told it was because he wanted disciplinary procedures followed. Plaintiff was written up for insolence toward staff, lying or providing false statements, disruptive conduct, threatening or intimidating behavior, tampering or blocking camera, and three or more minor rule violations. Plaintiff was not allowed to shower from May 24, 2023, to May 25, 2023, despite the fact that he used American Sign Language to beg for help to the camera in the detox cell.

Plaintiff states that he has still not heard from mental health and is afraid to use the grievance procedure. Plaintiff also claims that he fears for his safety at the jail because staff use excessive force and disregard his health and human rights, as well as his mental and emotional needs.

Plaintiff appears to be asserting violations of his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks damages. Plaintiff also seeks the following injunctive relief: (1) an order prohibiting future retaliation; (2) a formal investigation into the abuse he suffered at the jail; and (3) that he be given postage, writing supplies, and access to certified mail and a notary "on a loan as indigent for legal matters." (*Id.* at PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

6

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

As noted above, Plaintiff states that he is suing Defendants solely in their official capacities. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Here, Plaintiff's official capacity claims against the individual Defendants are, therefore, a suit against Hillsdale County. *See id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Leach v. Shelby Cnty.*, 891 F.2d 1241, 1245–46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself.").

Hillsdale County may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id*. at 508.

In the present action, Plaintiff fails to allege that there is an official policy or practice urging unconstitutional behavior. Although Plaintiff alleges that the jail had a policy of giving prisoners two pre-stamped postcards and a pencil instead of paper and envelopes, Plaintiff fails to allege that this practice resulted in any constitutional injury. As addressed below, Plaintiff fails to allege facts showing that limiting him to postcards and a pencil violated his First Amendment right to access the courts. Plaintiff also states that he was advised that "chemical punishment was procedure for the security of the jail." However, Plaintiff fails to allege what is meant by "the security of the jail," or to describe any specific basis for this assertion. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's allegations fail to show the existence of official policy or practice urging unconstitutional behavior, he fails to state a claim against Defendant Hillsdale County or against Defendants Hodshire and Liggett in their official capacities.

Even setting aside the capacity issue and addressing the merits of Plaintiff's claims, as explained below, Plaintiff's claims are subject to dismissal for failure to state a claim.

## B.     Access to Courts

The Court first construes Plaintiff's complaint to raise a First Amendment access to courts claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."

9

*Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff claims that his First Amendment right to access the courts was violated on April 4, 2023, when he was denied envelopes, stamps, and paper to contact courthouses in which he had pending criminal cases and was instead given two postcards and a pencil. Plaintiff also wanted writing supplies to inquire about filing a *pro se* divorce and access to a notary because his intent was to file a "claim to be certified mail, and an envelope with postage to send an intent to file claim to [the] Attorney General of Ohio, as well as to send in this complaint." (ECF No. 1, PageID.3.) However, Plaintiff fails to explain how the denial of additional writing supplies prejudiced him in those cases, as he could have used postcards for general inquiries on the status of his cases. Therefore, Plaintiff fails to show that this conduct caused any actual injury for purposes of the First Amendment.

Plaintiff asserts that his request for a certified copy of his jail account was denied, which affected his ability to apply to proceed *in forma pauperis* in this case. However, Plaintiff is unable to show that he was injured by this denial because he was ultimately granted *in forma pauperis*.

Plaintiff states that on May 22, 2023, and May 25, 2023, he was denied his legal materials for Zoom sentencings with Noble County and Dekalb County, respectively. However, Plaintiff fails to allege any facts indicating the nature of the material he was denied or to explain how he was injured by his lack of access to the material. Because Plaintiff fails to provide sufficient information to show that he suffered actual injury for purposes of the First Amendment, his access to courts claims are properly dismissed.

11

### C.      Substantive Due Process

Plaintiff states that Defendants violated his rights under the Fourteenth Amendment. It appears that Plaintiff is asserting a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"

*Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his conditions of confinement and medical claims. *See Graham*, 490 U.S. at 394 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation and access to courts claims. Thus, the standard applicable to that source, the First Amendment right to access to the courts and to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claim will be dismissed.

### D.      Retaliation

Plaintiff makes a conclusory assertion that, after he requested a certified copy of his jail account, he was subjected to a variety of retaliatory conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming without deciding that Plaintiff had a constitutionally protected right to request a certified copy of his account statement, the Court notes that Plaintiff failed to allege specific facts showing that Defendants' conduct was motivated by a desire to retaliate against him. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars

14

fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by his request for a certified copy of his jail account statement. He merely concludes that because he made this request within a few days, weeks, or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Plaintiff merely alleges temporal proximity between Defendants' conduct and his request for a certified account statement. Such allegations are insufficient to state a retaliation claim.

Likewise, Plaintiff's allegations that he was sprayed with pepper spray do not make out a retaliation claim. Plaintiff asserts that Defendant Liggett commented that he would break Plaintiff and that he was present when Plaintiff was sprayed with pepper spray by non-party Fucile. However, the Court notes that, prior to being sprayed with a chemical agent, Plaintiff was warned

that if he did not stop singing loudly he would be sprayed with pepper spray because his behavior was aggressive, contrary to the security of the jail, and interfered with the rights of others. Although Plaintiff does not indicate who made this comment, Plaintiff's allegations demonstrate he was aware that his conduct might result in him being pepper sprayed. Plaintiff does not have a Constitutional right to sing in a loud and disruptive manner. Therefore, the fact that Defendant Liggett stood by while non-party Fucile sprayed him with a chemical agent in response to his loud singing does not support a retaliation claim under the First Amendment.

### E.   Eighth Amendment

Finally, Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v.*

*McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff alleges that on May 24, 2023, Defendant Liggett told him he would be confined in a holding cell. Plaintiff states that he was called stupid and slow, was denied a mattress, and was told to sleep on the toilet by unspecified persons. Plaintiff states that this conduct, along with the denial of legal and religious materials, exacerbated his mental illness and he began rubbing his scalp and singing. This prompted his move to the incorrigible cell, and then to the detox cell, which

did not have working water. Plaintiff's anxiety continued to increase, and he was warned by an

unspecified person or persons that if he did not stop singing loudly, he would be sprayed with

pepper spray because singing loudly is aggressive and violates the rights of others. Plaintiff alleges

that he was subsequently sprayed by non-party Officer Fucile while Defendant Liggett and non-

party Officer Newland were present. Because there was no working water, Plaintiff states that he

was forced to wash his face and hands in the toilet following the incident and was not allowed a

shower from May 24, 2023, to May 25, 2023. Plaintiff also states that he was denied medical

attention for a reaction to the chemical spray, as well as mental health care.

   While those allegations are deeply troubling, Plaintiff does not specify who denied him a

shower or was responsible for the lack of water in the cell, and he does not allege that any of the

people he sued were involved in the denial of medical care and mental health care. He does not,

therefore, state a claim against those individuals.

   Regarding Defendant Liggett, the Court notes that Plaintiff fails to allege any facts showing

that Defendant Liggett was aware of the threat to use a chemical agent on Plaintiff or that he had

sufficient time to prevent Officer Fucile's use of the spray. An officer is liable for another officer's

use of excessive force where the defendant "'observed or had reason to know that excessive force

would be or was being used' *and* 'had both the opportunity and the means to prevent the harm

from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original)

(quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel.*

*Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663,

at *3 (6th Cir. Mar. 20, 2018). Nor does Plaintiff allege facts indicating who was responsible for

conditions in the holding cell. It is a basic pleading essential that a plaintiff attribute factual

allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state

a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Liggett.

With regard to Defendants Hodshire and Hillsdale County Jail Administration, Plaintiff fails to allege any facts showing that they acted with acted with deliberate indifference or had any involvement in any of the misconduct described above. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants Hodshire and Hillsdale County Jail Administration.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment and order consistent with this opinion will be entered.


Dated:   August 28, 2023                               /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       United States Magistrate Judge

19